**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| RANDY BOTTEN, ) | Civil Action No.: 2:23-cv-05064-DCN |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **COMPLAINT** |
| ) | |
| CHARLESTON COUNTY EMS and ) | |
| CHRISTOPHER COX, in his Individual ) | |
| Capacity, ) | |
| ) | |
| Defendants. ) | |

TO:   THE DEFENDANTS ABOVE-NAMED

The Plaintiff, complaining of the acts and omissions of the above-named Defendant, says as follows:

**JURISDICTION & VENUE**

1. At the time of the events giving rise to this action, Plaintiff Randy Botten was a resident and citizen of the County of Berkeley, State of South Carolina.

2. Upon information and belief, Defendant Christopher Cox was, at all times relevant hereto a citizen and resident of Charleston County, South Carolina.

3. Defendant Charleston County EMS is a political subdivision and governmental entity in South Carolina.

4. All acts and/or omissions giving rise to this action took place in Charleston County, South Carolina.

5. The parties hereto, subject matter hereof, and all matters hereinafter alleged are within the jurisdiction of this Court and this Court is the proper venue for this action.

**FACTS**

6. On or about July 9, 2021, Plaintiff was celebrating his upcoming wedding with his fiancée at 1301 Ashley Avenue, Folly Beach, S.C.

7. Plaintiff fell and hit his head.

8. Officers from the Folly Beach Police Department ("FBPD") arrived on the scene.

9. Defendant was dispatched and arrived on the scene.

10. Defendant's agents or employees called the physician on duty for Defendant, sometimes called "medical control", and were directed by medical control that Plaintiff lacked capacity to refuse medical care.

11. Plaintiff agreed to be transported via ambulance in exchange for his wife being let out of handcuffs.

12. While Defendant was enroute to the hospital, they alerted FBPD that they had pulled over at an intersection on Folly Road and stated that Plaintiff had become "combative".

13. At the time Plaintiff was alleged to have become "combative" he was in four-point restraints with a belt restraint also across his chest.

14. Defendant Cox described the "combative" behavior has Plaintiff trying to undo his restraints.

15. Defendant decides how much ketamine to inject into a person based on that person's body weight.

16. Defendant "weighs" a person by looking at that person and guessing their weight.

17. Defendant Cox injected Plaintiff with 300 milligrams of ketamine at 7:57 p.m.

18. Three (3) minutes after injecting Plaintiff with ketamine, Plaintiff was still restrained to the stretcher in the ambulance.

19. Defendant Cox injected Plaintiff with an additional 200 milligrams of ketamine at 8:12 p.m.

20. Defendant Cox did not consult with medical control prior to the second ketamine injection.

21. Defendant Cox's failure to consult with medical control prior to administering the second dose of ketamine is a breach of Defendant EMS' protocol at the time.

22. Defendant Cox injected no less than 500 milligrams of ketamine into the Plaintiff.

23. Prior to injecting 500 milligrams of ketamine into the Plaintiff, Defendant Cox was told that Plaintiff was drunk.

24. At all times relevant to the injections of ketamine by Defendants into the Plaintiff, Defendants believed that Plaintiff was intoxicated by alcohol.

25. Defendants injected Plaintiff with ketamine solely for the purpose of behavioral control.

26. Plaintiff did not consent to being injected with ketamine.

27. Injecting 500 milligrams of ketamine into a person who is intoxicated by alcohol is dangerous.

28. Injecting 500 milligrams of ketamine into a person intoxicated by alcohol can kill that person.

29. As a result of the ketamine that was injected into the Plaintiff, Plaintiff suffered acute respiratory failure.

30. In 2019, Defendant injected a man in Mount Pleasant, who had consumed alcohol, with ketamine, and that man died as a result.

31. Defendant has injected numerous citizens with ketamine resulting in acute respiratory failure.

32. Since the death of a man in Mount Pleasant and numerous cases of acute respiratory failure due to ketamine injection, Defendant has done nothing to improve its practices regarding ketamine.

33. Plaintiff suffered physical harm as a result of Defendant's acts and omissions.

34. Plaintiff suffered emotional distress as a result of Defendant's acts and omissions.

35. Plaintiff suffered harmful or offensive contact with his person as a result of Defendant's acts and omissions.

36. Plaintiff suffered forcible contact by Defendant.

37. But for Defendant's acts and omissions, Plaintiff would not have suffered the harm complained of herein.

## FOR A FIRST CAUSE OF ACTION
**Procedural and Substantive Due Process Violations of the Right to Bodily Integrity Pursuant to 42 U.S.C. § 1983
As to Defendant Cox, in his Individual Capacity**

38. The foregoing allegations are re-alleged as if set forth herein verbatim.

39. The constitutional rights actionable pursuant to 42 U.S.C. § 1983 include a Fourteenth Amendment substantive due process right against state action conduct that deprives an individual of bodily integrity.

40. The right to be free from state-occasioned damage to a person's bodily integrity is a clearly established right that additionally flows from the fundamental liberty of the individual as an American.

41. The right to be free from unwanted physical contact has been recognized by the Supreme Court: "No right is held more sacred, or is more carefully guarded, by the

common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pacific Railway Co. v. Botsford,* 141 U.S. 250, 251, 11 S.Ct 1000,1001, 35 L.Ed. 734 (1890).

42. The right to be free of unwanted physical invasions has been recognized as an integral part of the individual's constitutional freedoms, whether termed a liberty interest protected by the Due Process Clause or an aspect of the right to privacy afforded within the notions of personal freedom underlying the Bill of Rights.

43. The right to refuse medical treatment has been specifically recognized as a right protected by the constitution and is clearly established.

44. When Defendant Cox injected Plaintiff with ketamine, he was not providing medical treatment. Rather, the purpose of the sedation was at attempt to control Plaintiff's behavior.

45. Defendant Cox subjected Plaintiff to a powerful and dangerous controlled substance without a medical purpose or justification. Such actions were conducted with deliberate indifference for Plaintiff's fundamental right to personal liberty and bodily integrity.

46. The use of ketamine to sedate a patient without medical purpose or justification shocks the conscience and violates all fundamental principles of American liberty.

47. Under the facts of this case, the use of ketamine by Defendant Cox constitutes a violation of Plaintiff's Fourteenth Amendment right to bodily integrity.

48. The manner of violation by Defendant Cox lacked any observance of procedural due process as more particularly described above herein.

## FOR A SECOND CAUSE OF ACTION
### Negligence and Gross Negligence

49. The foregoing allegations are re-alleged as if set forth herein verbatim.

50. At all times relevant herein, Defendant Charleston County EMS, by and through its employees and agents, had a duty to exercise reasonable care in all aspects relating to the administration of controlled substances, including ketamine, in the performance of emergency medical services.

51. Defendant breached this duty by sedating Plaintiff with ketamine for the above-described purpose, without medical need or justification, and without Plaintiff's consent and against his express wishes.

52. Defendant used a dangerous sedative for non-medical reasons as set forth herein.

53. Defendant's breach was a direct and proximate cause of Plaintiff's injuries.

## FOR A THIRD CAUSE OF ACTION
### Assault and Battery
### Pursuant to South Carolina Common Law
### As to Defendant Cox

54. The foregoing allegations are re-alleged as if set forth herein verbatim.

55. An assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of another. A battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree. Any forcible contact is sufficient, and it need not be a blow. *Gathers v. Harris Teeter Supermarket, Inc.,* 282 S.C. 220, 317 S.E.2d 748 (1984).

56. As set forth above, the ketamine injections in this matter were directed solely at behavior control and had no relation to medical treatment.

57. The forcible contact by Defendant Cox was made for restraint purposes only. There was no medical purpose whatsoever for the intentional and willful acts of Defendant Cox.

58. Plaintiff was placed in reasonable fear of bodily harm when Plaintiff realized this individual Defendant intended to forcibly inject him with an unknown substance for a non-medical reason.

59. This individual Defendant injected Plaintiff despite not having Plaintiff's consent or approval, not having any medical approval or authorization, and acting completely outside any generally accepted standard of care.

60. Under the circumstances, the forcible contact described throughout was an unlawful and unauthorized battery.

WHEREFORE, Plaintiff prays for judgment against the Defendants both jointly and in combination thereof for actual, consequential and punitive damages, costs and reasonable attorney fees. Plaintiff demands a trial by jury as provided for in the Seventh Amendment to the Constitution of the United States of America.

BOLES LAW FIRM, LLC

s:/Daniel C. Boles
Daniel C. Boles
Federal Bar No.: 12144
3870 Leeds Avenue, Suite 104, 29405
248 E. Washington Street, 29488
101 McGee Street, 29601
843.576.5775 *office*
864.770.7705 *office*
800.878.5443 *fax*
dan@boleslawfirmllc.com

October 10, 2023
Charleston, SC                                              *Attorney for Plaintiff*