## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| RANDY BOTTEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:23-cv-05064-DCN |
| | ) | |
| CHARLESTON COUNTY EMS; and | ) | |
| CHRISTOPHER COX, *in his individual* | ) | **ORDER** |
| *capacity*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendant Charleston County EMS's ("EMS") motion to dismiss, ECF No. 6, defendant Christopher Cox's ("Cox") (together with EMS, "defendants") motion to dismiss, ECF No. 9, and plaintiff Randy Botten's ("Botten") motion to amend his complaint, ECF No. 22. For the following reasons, the court grants EMS's motion to dismiss, grants Cox's motion to dismiss, and denies Botten's motion to amend.

## I.  BACKGROUND[1]

Botten brings this action based on injuries he sustained while in the care of defendants on or about July 9, 2021. See generally ECF No. 1, Compl. That evening, Botten and his fiancé were on Folly Beach celebrating their upcoming wedding when Botten, who was apparently intoxicated, fell and hit his head. See id. ¶¶ 6–7, 23–24, 27–28. Both the police and the defendants responded to the scene shortly thereafter. Id. ¶¶ 8–9.

---

[1] The court presents the factual background in the light most favorable to Botten. See Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999).

As they were responding, EMS employees called EMS's physician on duty ("medical control") and determined that Botten "lacked capacity to refuse medical care." Id. ¶ 10.  After that determination was made, Botten agreed to be taken to the hospital in an ambulance, but he became combative during the trip.  Id. ¶¶ 11–13.  As a result, the ambulance was forced to pull over at an intersection, and EMS employees contacted the police and put Botten in a "four-point restraint with a belt across his chest."  Id. ¶¶ 12–13. After Botten continued to try to remove the belt, Cox injected Botten with 300 milligrams of ketamine.  Id. ¶¶ 14, 17.  About fifteen minutes later, Cox administered a second dose with an additional 200 milligrams of ketamine.  Id. ¶ 19.  Botten claims that he suffered acute respiratory failure as a result of these two ketamine injections.  Id. ¶¶ 29; see also id. ¶¶ 33–37.

The heart of Botten's allegations in this lawsuit is that these two ketamine injections were done without his consent and in a dangerous manner.  See id. ¶¶ 15–32. He says that EMS employees determine how much ketamine to administer by "looking at the person and guessing their weight."  Id. ¶¶ 15–16.  Botten claims that injecting an intoxicated person with 500 milligrams of ketamine is extremely dangerous and can result in that person's death, and he says that the defendants had been told he was drunk prior to their injecting him.  Id. ¶¶ 23–24, 27–28.  He further states that Cox did not consult with medical control prior to administering the second ketamine dose, which violated EMS's protocol.  Id. ¶¶ 20–21.  Botten believes the defendants did not have a legitimate medical purpose for injecting him with ketamine and instead administered the drug "solely for the purpose of behavioral control."  Id. ¶ 25.

Moreover, Botten does not believe this to have been an isolated incident.  Id. ¶¶ 30–32.  He claims that there have been numerous occasions of EMS injecting people with ketamine and those individuals suffering acute respiratory failure as a result.  Id. ¶¶ 31–32.  He points specifically to a 2019 incident in which a man died as a result of EMS injecting him with ketamine after the man had consumed alcohol.  Id. ¶ 30.  Botten argues that EMS "has done nothing to improve its practices regarding ketamine" since these previous occurrences.  Id. ¶ 32.

Botten filed this lawsuit on October 10, 2023.  See id.  He asserts three causes of action.  Id. ¶¶ 38–60.  His first cause of action is for violation of his procedural and substantive due process rights to bodily integrity pursuant to 42 U.S.C. § 1983.  Id. ¶¶ 38–48.  This cause of action is asserted directly against Cox in his individual capacity. Id. at 4.  The second cause of action is for negligence and gross negligence and is asserted exclusively against EMS.[2]  Id. ¶¶ 49–53.  Finally, Botten's third cause of action is for assault and battery and is asserted against Cox.  Compl. ¶¶ 54–60.

EMS moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on November 8, 2023, ECF No. 6, and Cox similarly moved for dismissal on November 11, 2023, ECF No. 9.  Thereafter, Botten responded to EMS's motion on November 27, 2023, ECF No. 11, and to Cox's motion on December 5, 2023, ECF No. 13.  EMS replied on December 1, 2023, ECF No. 12, and Cox replied on December 12, 2023, ECF No. 14.

---

[2] The caption to both Botten's first and third causes of action indicate that they are asserted exclusively against Cox, but the caption to his second cause of action does not list any particular defendant.  See Compl. at pp. 4, 6.  At a hearing on the motions to dismiss, Botten's counsel clarified that he asserts his first and third causes of action exclusively against Cox and his second cause of action exclusively against EMS.  ECF No. 21.

3

On February 8, 2024, the court held a hearing in which it heard arguments from the parties on the two pending motions to dismiss.  ECF No. 21.

Botten then moved to amend his complaint on February 13, 2024—after the hearing but before the court had ruled on either pending motion to dismiss.  ECF No. 22. Both Cox and EMS filed responses in opposition to Botten's motion to amend on February 27, 2024, ECF Nos. 23; 24, and Botten replied on March 3, 2024, ECF No. 25. As such, all three motions are fully briefed and now ripe for the court's review.

## II.  STANDARD

### A.  Motions to Dismiss

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief.  Mylan Lab's, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff.  Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Lab's, 7 F.3d at 1134.  "To survive a motion to dismiss, a complaint must contain sufficient factual

4

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Although the evaluation is generally limited to a review of the allegations of the complaint itself, and documents attached to the complaint as exhibits, a court may properly take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." Megaro v. McCollum, 66 F.4th 151, 157 (4th Cir. 2023).

### B.  Motion to Amend Complaint

Federal Rule of Civil Procedure 15(a)(1) provides:

A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "A motion to amend should be denied 'only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" HCMF Corp. v. Allen, 238 F.3d 273, 276 (4th Cir. 2001) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999)) (emphasis in original). "A proposed amendment is futile . . . if the claim it presents would not survive a motion to dismiss." Save Our Sound OBX, Inc. v. N.C. Dep't of Transp., 914 F.3d 213, 228 (4th Cir. 2019)

(internal quotation marks and citation omitted). As such, "[w]hen determining whether a proposed amendment is futile, a court should construe the amendment in the light most favorable to the party moving for amendment." Citibank USA, Nat'l Ass'n v. Ragsdale, 2006 WL 8438585, at *1 (E.D.N.C. Dec. 6, 2006).

### III. DISCUSSION

The court will begin its analysis by determining whether Botten's allegations, as they are currently pled, can survive the defendants' motions to dismiss. The court will then consider Botten's motion to amend his complaint.

#### A. Motions to Dismiss

The court reviews the motions to dismiss together, structuring its analysis to consider each of Botten's claims in turn. In so doing, the court will first turn to Botten's federal due process claim against Cox. After that, the court will consider Botten's common law claims—i.e., his negligence claim against EMS and his assault and battery claims against Cox.

#### 1. Botten's Federal Due Process Claim

Botten bases his first claim against Cox on the premise that there is a well-established right to bodily integrity, which is protected as part of an individual's liberty interest in the Due Process Clause. Compl. ¶¶ 39–40. He asserts that this includes the right to be "free from unwanted physical invasions" and to "refuse medical treatment." Id. ¶¶ 42–43. These interests were purportedly violated when Cox administered the ketamine doses without Botten's consent and without a valid medical purpose. Id. ¶¶ 44–48.

Cox argues that Botten's § 1983 claim fails as a matter of law because Botten has not alleged that he was "in custody." ECF Nos. 9 at 5; 14 at 5–6. Beyond that, Cox points to Botten's own allegations that he fell and hit his head; that the defendants consulted with medical control, who determined Botten lacked the capacity to refuse medical treatment; that Botten was combative in the ambulance on the way to the hospital; and that the ketamine was administered as a result. Id. at 4–5 (citing Compl. ¶¶ 6–25). He says that there is no caselaw from the Fourth Circuit supporting Botten's claim that these facts give rise to constitutional liability.[3] ECF Nos. 9 at 4–6; 14 at 4. Indeed, Cox concedes that these allegations may be sufficient to support a professional negligence claim, but he argues that Botten's allegations are insufficient to support a constitutional deprivation. ECF No. 9 at 6.

In response, Botten argues that he was "seized" for the purposes of the Fourth Amendment and that Cox deprived him of his constitutional right to "bodily integrity by twice dosing [Botten] with a substance that caused his acute respiratory failure." ECF

---

[3] Cox claims that the closest the Fourth Circuit has come to finding potential constitutional liability for emergency medical service workers in similar circumstances was in Tarashuk v. Givens, 53 F.4th 154 (4th Cir. 2022). ECF Nos. 9 at 5; 14 at 4–5. In that case, police responded after a man with schizoaffective disorder attempted to enter the cab of a tractor-trailer while the truck was traveling down I-95. Tarashuk, 53 F.4th at 158–59. A paramedic and emergency medical technician ("EMT") responded, examined the man, and offered to take him to either a hospital or jail for treatment. Id. at 159–160. However, the man declined, and police took him to a gas station instead. Id. at 160. Later that evening, he returned to I-95 and was killed by oncoming traffic. Id. at 161. The Fourth Circuit affirmed that the paramedic and EMT's failure to transport the man to a hospital or jail could constitute a violation of "a pretrial detainee's right to adequate medical care and freedom from deliberate indifference to his serious medical needs." Id. at 164. However, Botten and Cox agree that Tarashuk is factually distinguishable from this case because, unlike in this case, Tarashuck involved a pretrial detainee and related to emergency medical providers' refusal to provide medical care. ECF Nos. 9 at 5; 13 at 6; 14 at 4–5.

No. 13 at 5.  He thus says that Cox's decision to administer ketamine was more than mere negligence because it had no legitimate medical purpose and was rather "solely administered to quiet the fully restrained [Botten] down during the ride to the ER."  Id. at 6.  He says that the question of whether this conduct amounts to a deprivation of constitutional rights is a question for the jury.[4]  ECF No. 13 at 7.

The court finds that Botten's § 1983 claim must be dismissed because Botten's allegations do not give rise to a constitutional violation.  The Fourth Circuit recently outlined what is necessary for a plaintiff to assert a due process violation based on an invasion of bodily integrity.  See Washington v. Hous. Auth., 58 F.4th 170, 177 (4th Cir. 2023).  Namely, the plaintiff must show that the "defendant's behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'  To be conscience shocking, a defendant's behavior must lack 'any reasonable justification in the service of a legitimate governmental objective.'"  Id. (citation omitted) (first quoting Dean ex rel. Harkness v. McKinney, 976 F.3d 407, 413 (4th Cir. 2020); and then quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).

When determining whether a defendant's behavior is sufficiently shocking to support a due process claim, courts look to where that behavior fits on a "culpability

---

[4] In support of this argument, Botten cites deposition testimony from both Cox and EMS Deputy Chief Todd McGeorge, which Botten claims shows that Cox (1) knew ketamine was dangerous and (2) violated EMS protocol when he administered ketamine without first consulting with a physician.  ECF No. 13 at 5–6.  The court notes that Botten's use of deposition testimony in opposition to Cox's motion is not appropriate at this stage in the litigation, as the court must focus only on the factual allegations pled in the complaint when ruling on a motion to dismiss.  See Iqbal, 556 U.S. at 678.  As such, the court will disregard this extrinsic evidence while reviewing Cox's challenge to Botten's pleadings.  See Brown Goldstein Levy LLP v. Fed. Ins. Co., 68 F.4th 169, 174 (4th Cir. 2023).

spectrum." Id. (quoting Dean, 976 F.3d at 414). "On one end of the spectrum is 'conduct intended to injure [that is] in some way unjustifiable by any government interest.' Such conduct most likely rises to the conscience-shocking level. On the other end is 'negligently inflicted harm [which] is categorically beneath the threshold of constitutional due process conduct." Id. at 177–78 (citation omitted) (quoting Lewis, 523 U.S. at 849). Between these two extremes is deliberate indifference. Id. at 178. Whether a defendant's deliberate indifference rises to the level of a constitutional violation is "a closer call" and "depends on 'an exact analysis of [the] context and circumstances' of the case." Id. (quoting Dean, 976 F.3d at 415).

Like the parties, the court has been unable to find any cases in which the Fourth Circuit has considered where allegations similar to those in this case fit on this culpability spectrum. However, the Eighth Circuit recently ruled that "paramedics did not engage in conscience shocking conduct in electing to sedate a suicidal, intoxicated woman to protect both the patient and themselves." Buckley v. Hennepin Cnty., 9 F.4th 757, 763 (8th Cir. 2021). In that case, much like in this one, emergency medical service providers used ketamine to sedate an intoxicated patient who had been restrained during an ambulance ride to the hospital because she was being combative. Id. at 759–60.

The court went on to find that the paramedics' behavior, in "sedating an agitated patient during the trip to the hospital to protect the patient and her emergency medical providers [was] not deliberate indifference." Id. at 764 ("Placing a person in need of emergency medical care on a medical transportation hold and transporting her to a hospital 'demonstrates a deliberate concern for [her] well-being, and not an indifference.'" (alteration in original) (quoting Haslar v. Megerman, 104 F.3d 178, 180

(8th Cir. 1997)).  This was true even though the complaint alleged that the paramedics knew administering ketamine could be dangerous and could lead to "respiratory difficulties."  Id.

While Botten may not have been suicidal in this case, the Eighth Circuit's reasoning is instructive.  Despite Botten's conclusory allegations that Cox's actions "shock[] the conscience" and "were conducted with deliberate indifference," compl. ¶¶ 46–47, and despite his argument that these actions amount to more than mere negligence, ECF No. 13 at 6, Botten's factual allegations do not indicate any behavior that rises to a constitutional violation.[5]  See Buckley, 9 F.4th at 762–64.  The court dismisses Botten's § 1983 due process claim for this reason.

### 2.  Botten's Common Law Claims

EMS and Cox both argue that the common law claims asserted against them must be dismissed because they are barred by the South Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. § 15-78-10, et seq.  ECF Nos. 6 at 3; 9 at 2.  In response, Botten suggests that the SCTCA is not applicable.  See ECF Nos. 11 at 2–3; 13 at 4.  Yet it is not entirely clear why Botten believes the SCTCA does not apply to the South Carolina common law claims he asserts against the defendants.  In his response to EMS's motion to dismiss, Botten states that his claim against EMS is not barred by SCTCA's statute of limitations because "[a] claim filed under 42 U.S.C. § 1983 follows the applicable state law statute of limitations."  ECF No. 11 at 2.  Likewise, in his response to Cox's motion to dismiss,

---

[5] Moreover, as Cox alludes, he may have faced liability for deliberate indifference if he had not transported Botten to the hospital.  See Tarashuk, 53 F.4th at 164.  Thus, accepting Botten's position would result in a "kind of Catch-22 . . . treat the arrestee or don't treat him, but face a lawsuit either way."  Thompson v. Cope, 900 F.3d 414, 423 (7th Cir. 2018).

Botten suggests that South Carolina caselaw interpreting the SCTCA is distinguishable from this case because the state-case "was initiated, tried, and appealed in South Carolina state court and did not allege any causes of action under 42 U.S.C. § 1983." ECF No. 13 at 4. From this, the court interprets that Botten is arguing that the SCTCA does not limit his common law claims either because he brings those claims in federal court or because he brings them pursuant to § 1983. Either way, Botten is mistaken.

The common law doctrine of sovereign immunity protects the State of South Carolina and its political subdivisions from suits over the tortious conduct of its employees. See McKenzie v. City of Florence, 108 S.E.2d 825, 827–28 (S.C. 1959). The South Carolina General Assembly passed the SCTCA as a limited waiver of sovereign immunity for certain tortious acts. Browning v. Hartvigsen, 414 S.E.2d 115, 116 (S.C. 1992); see S.C. Code Ann. § 15-78-20(b), (c). Thus, the SCTCA, not § 1983, is the exclusive remedy for plaintiffs, such as Botten, to assert common law tort claims against the State of South Carolina or any entity or employee thereof, and tort claims generally may not be brought against a governmental entity or employee except as provided in the statute. See S.C. Code Ann. §§ 15-78-70(a); 15-78-200; Doe v. City of Duncan, 789 S.E.2d 602, 605–06 (S.C. Ct. App. 2016); see also Cramer v. Crutchfield, 648 F.2d 943, 945 (4th Cir. 1981) ("A valid cause of action under § 1983 is not alleged simply by the assertion that a common law tort was committed by a state official."). What's more, the fact that a case is in federal court does not bar defendants from asserting the defenses available to them under that statute. See, e.g., McCoy v. City of Columbia, 929 F. Supp. 2d 541, 564–67 (D.S.C. 2013).

11

Having found that common law tort claims are generally governed by the SCTCA, the court's task is to now determine whether the SCTCA bars the particular claims Botten asserts against these defendants.[6]  This requires a two-step inquiry.  First, the court must consider the "threshold issue" of whether the defendants' alleged actions fall inside or outside the ambit of the SCTCA.  See Smith v. City of Greenwood, 2010 WL 2382479, at *3 (D.S.C. June 14, 2010).  If the allegations are covered by the SCTCA, the court must proceed to consider whether the claims are barred or limited by the SCTCA.  See id.  Ultimately, the court finds that the Botten's common law claims are barred by the SCTCA's statute of limitations and dismisses the claims accordingly.

### a.  The SCTCA Applies to Botten's Tort Claims

Under the SCTCA, "[a]n employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except" when "it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude."  S.C. Code Ann. § 15-78-70(a), (b).  If an employee's tortious actions fall within the protection of this provision, the employee is immunized from liability, and the plaintiff must sue the governmental entity, rather than the employee.  See Newkirk v.

---

[6] Confusingly, Botten appears to concede that the SCTCA, if applicable, would bar his tort claims.  See ECF Nos. 11 at 2 (arguing that his claims are governed by South Carolina's general statute of limitations for negligence claims rather than the SCTCA statute of limitations), 3 ("[T]he SCTCA does not allow a Plaintiff to seek relief against an individual such as Defendant Christopher Cox in this matter."); 13 at 5 (acknowledging that the SCTCA requires the governmental entity be substituted as the defendant when "the alleged tort took place while the employee was in the scope and course of work for that entity" but arguing "[t]hat is not the case under 42 U.S.C. § 1983 where a plaintiff alleges violations of their [sic] federal constitutional rights").  In any event, the court proceeds to explain why the SCTCA bars Botten's tort claims.

12

Enzor, 240 F. Supp. 3d 426, 436 (D.S.C. 2017). "However, if the plaintiff proves that 'the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude,' then the governmental agency is not liable, and the employee is personally liable." Id. (quoting Roberts v. City of Forest Acres, 902 F. Supp. 662, 671 (D.S.C. 1995)). Either way, the plaintiff may not proceed against both the governmental entity and its employee—a conspicuous defect in Botten's pleadings which he does not attempt to explain. See id.

At the motion to dismiss stage, courts look to the plaintiff's complaint to determine whether the governmental employee is alleged to have acted within the scope of his official duties when he committed the tortious acts. See Smith, 2010 WL 2382479, at *2–3, 5. If the plaintiff alleges only conduct by a governmental employee within the scope of the employee's official duties, the SCTCA applies, and the employee is immune. See id. at *2. In contrast, the SCTCA "does not apply where a complaint alleges actions by governmental employees that fall outside the scope of their official duties or constitutes intentional torts." Id. at *5. The SCTCA defines "'scope of official duty' or 'scope of state employment'" as "(1) acting in and about the official business of a governmental entity and (2) performing official duties." S.C. Code Ann. § 15-78-30(i). An employee's act may be "in and about the official business of a governmental entity" even if it is arguably outside of the governmental entity's authority. See Flateau v. Harrelson, 584 S.E.2d 413, 417 (S.C. Ct. App. 2003).

Additional considerations are necessary when the governmental employee is accused of committing an intentional tort, such as assault and battery, even when those

13

torts are committed within the scope of the employee's official duties. Newkirk, 240 F. Supp. 3d at 436–37. The SCTCA requires neither categorical immunization nor categorical liability for the governmental employee in such situations. See id. Rather, the employee will be personally liable under the statute only when the employee's tortious "conduct constitutes 'actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.'" Id. at 437.

The court finds that the SCTCA is applicable to the common law claims Botten asserts against defendants in this case because Botten does not allege that Cox, or any other EMS employee, engaged in any conduct outside the scope of his official duties or with an intent to harm Botten. Botten alleges that Cox administered the ketamine injections for "behavior control" or "restraint purposes" rather than "medical purposes." See Compl. ¶¶ 45–46, 56–58. However, Botten fails to allege that patient restraint during transport is somehow outside of EMS's official governmental duties. See id.; see also S.C. Code Ann. Regs. 61-7 § 1901(J)(3) ("The EMS Agency shall ensure a restraining device is provided to prevent longitudinal or transverse dislodgement of the Patient during transit or to restrain an unruly Patient to prevent further injury or aggravation to the existing injury."). Similarly, even if the second ketamine injection violated EMS protocol, and Cox was therefore acting beyond any actual authority, such would be insufficient to show Cox's actions were for a purpose other than furthering EMS's official duties.[7] See Flateau, 584 S.E.2d at 417. Likewise, by alleging that Cox injected

---

[7] The court recognizes that the caption in Botten's complaint indicates that he is proceeding against Cox "in his Individual Capacity." Compl. at 1. Merely naming a defendant in his individual capacity in a complaint's caption is not sufficient to escape dismissal if the allegations in the complaint indicate the employee was, in fact, acting in the scope of his governmental employment. See Cunningham v. Lester, 990 F.3d 361,

14

him with ketamine for "behavior control" or "for restraint purposes," Botten plainly

states that Cox administered the injections for a purpose other than maliciously harming

Botten, and he does not allege Cox acted in furtherance of any other purpose.  See

Compl. ¶¶ 56–58.

Thus, Botten fails to allege conduct that falls outside of the scope of the SCTCA.

See S.C. Code Ann. § 15-78-70(a), (b); Flateau, 584 S.E.2d at 417; cf. Smith, 2010 WL

2382479, at *2; Newkrik, 240 F. Supp. 3d at 436–37.  As such, the SCTCA applies to the

common law tort claims asserted in this case, and Cox is not a proper defendant in this

action.

---

365–67 (4th Cir. 2021) ("If, despite the form of Cunningham's caption, the government is
the real party in interest, then this court is not a constitutionally proper forum for
consideration of the allegations he raises in his complaint."); see also Lundgren v.
McDaniel, 814 F.2d 600, 604 n.2 (11th Cir. 1987) ("Courts have considered the caption
of a complaint when analyzing whether a lawsuit is against a defendant personally or in
his official capacity, but have not treated the caption as determinative of the capacity in
which a defendant is sued.").  Moreover, the caption appears to specifically reference
Botten's federal claims, which are asserted "As to Defendant Cox, in his Individual
Capacity," and not as a reference to Botten's state tort claims, which are asserted
"Pursuant to South Carolina Common Law As to Defendant Cox."  Compl. at 4, 6.
    Beyond that, Botten's negligence claim against EMS is predicated on his
allegation that "EMS, by and through its employees and agents, had a duty to exercise
reasonable care in" administering treatment during emergency medical services.  Id. ¶ 47.
He then says that EMS "breached this duty by sedating [him] with ketamine."  Id. ¶ 48.
The court interprets this as an attempt to hold EMS liable for negligence under a
respondeat superior theory.  See id. ¶¶ 47–48; see also Compl. ¶ 38, Botten v. Charleston
Cnty. EMS, No. 2022-CP-10-02402 (Charleston Cnty. Ct. C.P. filed May 26, 2022)
(state-court case in which Botten brings a negligence claim against EMS based on the
same facts alleged in this case and alleges that "[a]t all times relevant herein, [EMS's]
employees were acting in the scope of their employment").  Under this theory, an
employer can be held liable for the tortious acts of his employee "when those acts occur
in the course and scope of the employee's employment."  James v. Kelly Trucking Co.,
661 S.E.2d 329, 330 (S.C. 2008).  This further shows that Cox is not alleged to have
acted outside of his official governmental duties for EMS.

### b.  The SCTCA's Statute of Limitations Bars Botten's Tort Claims

Claims brought pursuant to the SCTCA must be commenced within two years of the plaintiff's injury or the date when that injury was or should reasonably have been discovered.  S.C. Code Ann. § 15-78-110.  A statute of limitations defense is an affirmative defense that must be proven by the defendant.  <u>Goodman v. Praxair, Inc.</u>, 494 F.3d 458, 464 (4th Cir. 2007).  Normally, motions to dismiss pursuant to Rule 12(b)(6) are not the appropriate forum for contesting the merits of an affirmative defense.  <u>Id.</u> However, the court may do so in those rare instances when all of the "facts necessary to the affirmative defense 'clearly appear[] <u>on the face of the complaint</u>.'"  <u>Id.</u> (quoting <u>Richmond, Fredericksburg & Potomac R.R. v. Forst</u>, 4 F.3d 244, 250 (4th Cir. 1993)). This case presents one of those instances.

Botten's complaint plainly states that all of the events giving rise to his claims occurred "on or about July 9, 2021."  Compl. ¶ 6.  However, this action was not commenced until October 10, 2023—more than two years later.  <u>See</u> Compl.  For this reason, the tort claims asserted against both EMS and Cox must be dismissed, and both motions to dismiss are granted accordingly.[8]

---

[8] EMS alternatively argues that this court should abstain from this case under the <u>Colorado River</u> doctrine because Botten has filed a sperate case against EMS in state court based on the same factual allegations in this case. ECF No. 6 at 4–5. Much like in this case, Botten alleges a negligence cause of action against EMS in the state-court case. <u>See generally</u> Compl., <u>Botten</u>, No. 2022-CP-10-02402.  Botten concedes that his state-court negligence claim is limited by the SCTCA, which does not permit recovery of attorney's fees or punitive damages. ECF No. 11 at 3. However, because he believes the SCTCA is not applicable to his federal case, he is pursuing punitive damages in this case. <u>See</u> Compl. at 7. Therefore, he says that the two cases are not sufficiently parallel to warrant abstention. ECF No. 11 at 3.

For reasons explained above, the SCTCA applies to Botten's tort claims against governmental entities, regardless of whether those claims are asserted in state or federal court.  <u>See</u> <u>McCoy</u>, 929 F. Supp. 2d at 564–67.  Therefore, the SCTCA does not

16

### B. Botten's Motion to Amend

Botten argues that he should be permitted to amend his complaint to add "federal claims of negligent hiring, training, and supervision as well as direct claims against Defendant Cox."[9]  ECF No. 22 at 1–2.  In a proposed amended complaint he attached to

---

distinguish the negligence claim asserted by Botten against EMS in this case from the negligence claim asserted by Botten against the same defendant in state court.  See id.  As such, these two claims are parallel, and the abstention doctrine provides an alternative reason for dismissing the negligence claim in this case.  See New Berkley Min. Corp. v. Int'l Union, United Mine Workers of Am., 946 F.2d 1072, 1073–74 (4th Cir. 1991).

[9] If Botten had filed his amended complaint within twenty-one days after service of defendants' motions to dismiss, his amended complaint would have been timely filed "as a matter of course."  See Fed. R. Civ. P. 15(a)(1)(B).  If he had done so, Botten's amended complaint would have superseded his original complaint, which could have rendered defendants' motions to dismiss moot.  See Fawzy v. Wauquiez Boats SNC, 873 F.3d 451, 455 (4th Cir. 2017); Oppenheimer v. Goldklang Grp., 2019 WL 13267086, at *1 (D.S.C. Feb. 15, 2019) ("[M]otions directed at the superseded pleading generally are to be denied as moot." (quoting Perez v. Staples Cont. & Com. Inc., 2013 WL 5570002, at *1 (D.S.C. Oct. 8, 2013)).  However, that is not what happened; instead, Botten did not attempt to amend his complaint until February 13, 2024—ninety-eight days after EMS filed its motion to dismiss, eighty-five days after Cox filed his motion to dismiss, and six days after the court held a hearing on the motions to dismiss.  See ECF Nos. 6; 9; 21; 22.  Botten claims that the reason for the delay was because the new allegations in the proposed amended complaint are "based on additional information obtained through the discovery process, such as Defendant Cox's deposition on August 23, 2023."  ECF No. 22 at 1.  The court notes that August 23, 2023, was forty-nine days before Botten filed his original complaint, seventy-eight days before EMS filed its motion to dismiss, ninety-one days before Cox filed his motion to dismiss, one hundred and seventy days before the hearing on the motions to dismiss, and one hundred and seventy-five days before Botten filed his motion to amend his complaint.  See ECF Nos. 1; 6; 9; 21; 22.

In any event, because of Botten's delay, his original complaint remains operative and will only be superseded by his proposed amended complaint either with defendants' consent or leave of the court.  See Fed. R. Civ. P. 15(a)(2); cf. Fawzy, 873 F.3d at 455.  Courts should generally not give leave to amend when it is apparent that a "proposed amendment is brought solely to circumvent [a previously filed] motion to dismiss." Googerdy v. N.C. Agric. & Tech. State Univ, 386 F. Supp. 2d 618, 624 (M.D.N.C. 2005).  Moreover, "when a motion to dismiss and a motion to amend are both fully briefed and largely share the same standard of review—the court need not 'deem the motion to dismiss mooted by the requested amendment.'"  Lohrenz v. Bragg Cmtys., LLC, 2023 WL 3012006, at *5 (E.D.N.C. Mar. 31, 2023) (quoting Hooker v. Citadel Salisbury LLC, 2022 WL 1663421, at *3 (M.D.N.C. May 25, 2022)), report and recommendation adopted 2023 WL 3011982 (E.D.N.C. Apr. 19, 2023).  Likewise, "if a defendant alleges

his motion, he specifically proposes three new causes of action: "Negligent Hiring,

Negligent Training, Negligent Supervision under 42 U.S.C. 1983 [sic]"; punitive

damages; and attorney's fees pursuant to 42 U.S.C. § 1988.  ECF No. 22-1.  In their

respective responses, defendants argue that this amendment should not be permitted

because it would be futile.  ECF Nos. 23 at 2; 24 at 2.  The court agrees with defendants

upon review of each new cause of action.

      First, Botten's proposed claims for negligent hiring, training, and supervision are

futile because they are barred by the SCTCA for the same reasons his original negligence

claim is barred.  As explained above, § 1983 is not the proper vehicle for asserting state-

based common law claims—such as those brought under a negligence theory.  See

Cramer, 648 F.2d at 945; Muldrow v. United States, 972 F.2d 341 (4th Cir. 1992)

(unpublished table opinion) (noting that negligence is a state law claim); see also Erie

R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) ("There is no federal general common

law."); Est. of Green v. City of Annapolis, 2023 WL 6381453, at *8–30 (D. Md. Sept. 30,

2023) (dismissing negligent hiring, training, retention, and supervision claims on state

---

that an amended complaint 'suffers from the same defect as the original [c]omplaint,' the
court may address the motion to dismiss alongside the motion to amend."  Id. at *4
(alteration in original) (quoting Slumber Parties, Inc. v. Cooper, 2012 WL 2915110, at *4
(D. Md. July 16, 2012)); accord Oppenheimer, 2019 WL 13267086, at *1 ("However,
'[i]f some of the defects raised in the original motion remain in the new pleading, the
court simply may consider the motion as being addressed to the amended pleading'
because to 'hold otherwise would be to exalt form over substance.'" (alteration in
original) (quoting 6 Charles Alan Wright et al., Federal Practice and Procedure § 1476
(3d ed.)).  Because the causes of action Botten seeks to add in his proposed amended
complaint are futile if he fails to state a claim—the same standard by which the court
judges his original complaint—and because defendants argue the proposed amended
complaint suffers from the same defects as Botten's original complaint, the court rules on
all pending motions simultaneously.  See ECF Nos. 23; 24; Lohrenz, 2023 WL 3012006,
at *4–5.

law grounds and dismissing § 1983 claims on federal law grounds). Thus, Botten's new negligent hiring, training, and supervision claims are futile because they would not survive a motion to dismiss. See Save Our Sound OBX, Inc., 914 F.3d at 228.

Second, Botten's proposed punitive damages claim is directed against Cox and is based on two alternative theories: Botten says he is entitled to punitive damages because (1) Cox's actions were "intentional, willful, and malicious [and] were done with conscious disregard and deliberate indifference for the rights afforded to [Botten]" and (2) "Cox acted with reckless disregard for the constitutional protections afforded to [Botten]." ECF No. 22-1 ¶ 68. To the extent Botten's claim for punitive damages is based on his tort claims against Cox for assault and battery, it is futile because those claims are barred by the SCTCA.[10] See S.C. Code Ann. §§ 15-78-70 (requiring that suits

---

[10] The court previously explained that the common law tort claims Botten asserted in his original complaint are covered—and barred—by the SCTCA in part because Botten failed to allege that Cox maliciously intended to injure him. The court recognizes that Paragraph 68 in Botten's proposed amended complaint could generously be read as an allegation that Cox did act with a malicious intent to harm Botten. Of course, such a reading would be contradicted by other paragraphs in the proposed amended complaint which assert that the purpose of Cox's injection was to restrain a combative Botten. See ECF No. 22-1 ¶¶ 13, 63. In any event, even if Botten proposes to allege that Cox acted with malicious intent to harm him, it is unclear whether his common law tort claims would be subject to the SCTCA's two-year statute of limitations. Some courts have indicated the SCTCA's statute of limitations would apply. See Flateau, 584 S.E.2d at 209 ("We rule the [SCTCA's] two-year statute of limitations applies even if the Board members acted outside the scope of their official duties or if their actions constituted fraud, actual malice, intent to cause harm, or a crime involving moral turpitude." (emphasis added)); Price v. Town of Atl. Beach, 2013 WL 5945728, at *5–6 (D.S.C. Nov. 6, 2013) (holding that the two-year statute of limitations is applicable even if the governmental employee was acting outside the scope of his official duties). Yet other courts have reached the opposite conclusion. See Smith, 2010 WL 2382479, at *2 (declining to follow the rule announced by the South Carolina Court of Appeals in in Flateau partially because "it was dicta"); see also Ferrara v. Hunt, 2010 WL 5479655, at *8 n.3 (D.S.C. July 19, 2010) (noting "difference of opinion about whether a claim falling within § 15-78-70(b)'s exceptions is governed by the statute of limitations contained in the Tort Claims Act or South Carolina's general statute of limitations for

be directed at governmental entities rather than governmental employees); 15-78-120(b)

("No award for damages under this chapter shall include punitive or exemplary damages

or interest prior to judgment."). To the extent Botten's punitive damages claim is based

on his constitutional allegations against Cox, it is futile because Botten has not alleged a

constitutional violation, as previously discussed.

Finally, Botten seeks attorney's fees pursuant to 42 U.S.C. § 1988. ECF No. 22-1

¶ 71. This statute allows courts to award attorney's fees to the prevailing party in civil

rights cases under certain circumstances. 42 U.S.C. § 1988; see also Stinnie v. Holcomb,

77 F.4th 200, 206 (4th Cir. 2023) (en banc). Because the court is dismissing all of

Botten's claims, he is not the prevailing party, and the addition of this cause of action

would thus be futile. As such, all of Botten's proposed claims would be futile, and the

court denies his motion to amend. See Allen, 238 F.3d at 276.

---

torts"), report and recommendation adopted 2010 WL 5479652 (D.S.C. Dec. 29, 2010);
Stoneburner v. Thompson, 2014 WL 2095160, at *5 n.12 (D.S.C. May 20, 2014) (noting
distinction between Flateau and Smith). The court need not venture into this uncertain
question of South Carolina law. Because Botten has failed to allege a violation of the
Due Process Clause—his sole federal cause of action—the court would simply decline to
exercise supplemental jurisdiction over his state law claims. See 28 U.S.C. § 1367(c).
For this reason, Botten's proposed amended complaint would not survive a motion to
dismiss and is futile. See Save Our Sound OBX, Inc., 914 F.3d at 228.

## IV.  CONCLUSION

For foregoing reasons, the court **GRANTS** EMS's motion to dismiss, **GRANTS**

Cox's motion to dismiss, **DENIES** Botten's motion to amend his complaint, and

**DISMISSES** this case with prejudice.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 14, 2024**
**Charleston, South Carolina**